UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| ANURAG KACHRODIA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACADIA HEALTHCARE COMPANY, INC., DEBRA K. OSTEEN, CHRISTOPHER H. HUNTER, DAVID M. DUCKWORTH, and HEATHER DIXON,<br><br>Defendants. | Case No. 3:24-cv-01238<br><br>CLASS ACTION<br><br>Chief Judge William L. Campbell, Jr. |
| CITY OF FORT LAUDERDALE POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br>Plaintiff,<br><br>v.<br><br>ACADIA HEALTHCARE COMPANY, INC., DEBRA K. OSTEEN, CHRISTOPHER H. HUNTER, DAVID M. DUCKWORTH, and HEATHER DIXON,<br><br>Defendants. | Case No. 3:24-cv-01447<br><br>CLASS ACTION<br><br>Judge Aleta A. Trauger |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

SUMMARY OF THE RELATED ACTIONS ....................................................................................4

ARGUMENT.....................................................................................................................................7

I. The Pension Funds Are The Most Adequate Plaintiff...........................................................7

    A. The Pension Funds' Motion Is Timely .....................................................................7

    B. The Pension Funds Have The Largest Financial Interest In The Relief Sought By The Class....................................................................................................8

    C. The Pension Funds Otherwise Satisfy The Requirements Of Rule 23 ...................9

    D. The Pension Funds Are Precisely The Type Of Lead Plaintiff Envisioned By The PSLRA .......................................................................................................10

II. The Court Should Approve The Pension Funds' Selection Of Counsel.............................14

III. The Related Actions Should Be Consolidated....................................................................18

CONCLUSION................................................................................................................................19

CASES                                                                      PAGE(S)

*Blitz v. AgFeed Indus., Inc.*,
    2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012)...............................................................11

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
    2017 WL 5759361 (N.D. Ohio Nov. 28, 2017)..........................................................12

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ......................................................................2

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ....................................................................12, 14

*Eshe Fund v. Fifth Third Bancorp*,
    2008 WL 11322108 (S.D. Ohio Dec. 16, 2008) .....................................................12

*Farrah v. Provectus Biopharmaceuticals, Inc.*,
    68 F. Supp. 3d 800 (E.D. Tenn 2014)...................................................................9, 10

*Franchi v. SmileDirectClub, Inc.*,
    2020 WL 6479561 (M.D. Tenn. Jan. 27, 2020)....................................................9, 19

*French v. CBL & Assocs. Properties, Inc.*,
    2016 WL 7668501 (E.D. Tenn. Sept. 26, 2016)..................................................18, 19

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
    2020 WL 3396660 (S.D. Ohio June 19, 2020) ........................................................8

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) ...................................................................................12

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) .................................................11, 14

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
    2019 WL 494129 (M.D. Tenn. Jan 9, 2019)........................................................9, 11

*Walker v. L Brands, Inc.*,
    2019 WL 10733381 (S.D. Ohio Oct. 16, 2019)......................................................15

*Washtenaw Cnty. Emps' Ret. Sys. v. Dollar Gen. Corp.*,
    2024 WL 1468982 (M.D. Tenn. Apr. 4, 2024)..................................................10, 11

STATUTES

15 U.S.C. § 78u-4 *et seq.* ...................................................................... *passim*

Case 3:24-cv-01238     Document 24     Filed 12/16/24     Page 3 of 27 PageID #: 304

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4)......................................................................................................10

Fed. R. Civ. P. 42(a) ........................................................................................................18

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...............11

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679...................................3

IBEW Local 353 Pension Plan ("Local 353"), Louisiana State Police Retirement System ("Louisiana Police"), and City of Fort Lauderdale Police and Firefighters' Retirement System ("Fort Lauderdale P&F," and collectively with Local 353 and Louisiana Police, the "Pension Funds") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (1) appointing the Pension Funds as Lead Plaintiff; (2) approving their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Saxena White P.A. ("Saxena White") as Lead Counsel and Sanford Heisler Sharp McKnight, LLP ("Sanford Heisler Sharp McKnight") as Liaison Counsel for the Class; (3) consolidating the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) granting any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Fort Lauderdale P&F, in a complaint filed on December 11, 2024, alleges that between February 28, 2020, and October 30, 2024, inclusive (the "Class Period"), Acadia Healthcare Company, Inc. ("Acadia" or the "Company") and certain of the Company's current and former senior executives (collectively, "Defendants") defrauded investors that purchased Acadia securities in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5.[1]  Specifically, that action alleges that, throughout the Class Period, Defendants made

---

[1] The Related Actions assert slightly different class periods.  Specifically, the operative complaint in *Kachrodia v. Acadia Healthcare Company, Inc.*, No. 3:24-cv-01238 (M.D. Tenn.)

material misrepresentations concerning the quality and safety of the services Acadia provided to patients and the Company's financial performance and growth prospects that were purportedly driven by the large number of patients that received treatments at its facilities and the increased amount of time that patients stayed at those facilities. Acadia investors, including the Pension Funds, incurred significant losses after *The New York Times* published an investigative report revealing Acadia had been holding patients in its facilities against their will to maximize insurance payouts, which led to a slew of criminal and civil investigations into Acadia's practices.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a presumption that the "most adequate plaintiff" is the "person or group of persons" that has the "largest financial interest" in the relief sought by the Class and that also makes a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Pension Funds are the "most adequate plaintiff" by virtue of, among other things, the approximately $726,339 in losses, as calculated on a last-in, first-out ("LIFO") basis, that they incurred on their purchases of 41,681 shares of Acadia common stock during the Class Period.[2]

---

("*Kachrodia*") asserts a class period of February 28, 2020, to October 18, 2024, inclusive (*see Kachrodia*, ECF No. 7), while the operative complaint in *City of Fort Lauderdale Police and Firefighters' Retirement System v. Acadia Healthcare Company, Inc.*, No. 3:24-cv-01447 (M.D. Tenn.) ("*City of Fort Lauderdale*") asserts a class period of February 28, 2020, to October 30, 2024, inclusive (*see City of Fort Lauderdale*, ECF No. 7-1). For purposes of this motion, the Pension Funds have used the longest-pleaded class period in the Related Actions to calculate their financial interest. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010) ("With regard to the proper class period for purposes of selecting a lead plaintiff, numerous courts have favored using the longest-noticed class period.") (collecting cases).

[2] The Pension Funds' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Kevin H. Sharp in Support of the Motion of the Pension Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of Related Actions (the

In addition to asserting a substantial financial interest, the Pension Funds satisfy the applicable requirements of Rule 23 because their claims are typical of all members of the Class, and they will fairly and adequately represent the interests of the Class. Indeed, the Pension Funds are the paradigmatic investors that Congress intended to serve as lead plaintiff under the PSLRA because they are sophisticated institutional investors with a substantial financial interest in the litigation. The appointment of the Pension Funds as Lead Plaintiff would fulfill this critical legislative purpose. *See* S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]").

Further, as set forth in greater detail in their Joint Declaration submitted herewith, the Pension Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake those responsibilities to ensure the vigorous prosecution of this action. *See* Sharp Decl., Ex. C ¶¶ 3-4, 6, 17.[3] Before seeking appointment as Lead Plaintiff, representatives of the Pension Funds participated in a conference call and discussed, among other things, how they will jointly prosecute this action and oversee their chosen counsel, and otherwise ensure the vigorous yet cost-effective prosecution of this litigation. *See id*. ¶¶ 12-14.

The Pension Funds have further demonstrated their adequacy through their selection of Bernstein Litowitz and Saxena White to serve as Lead Counsel for the Class. Bernstein Litowitz

---

"Sharp Decl."). On December 13, 2024, three days after Fort Lauderdale P&F signed its certification that was filed together with its complaint against Defendants (*see City of Fort Lauderdale*, ECF No. 1-1), Fort Lauderdale P&F filed a motion seeking appointment as lead plaintiff in *Patel v. Edwards Lifesciences Corp.*, No. 24-cv-2221 (C.D. Cal.). In addition, charts providing calculations of the Pension Funds' losses are provided as Exhibit B to the Sharp Decl.

[3] *See* Joint Declaration of Kim Macpherson, Margaret Corley Michel, and Lynn Wenguer in Support of the Motion of the Pension Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of Related Actions (the "Joint Declaration"), Sharp Decl., Ex. C.

and Saxena White are nationally recognized securities litigation firms that have recovered billions for defrauded investors. Both firms are eminently qualified to prosecute this case and their extensive experience in securities fraud litigation will benefit the Class. Similarly, Sanford Heisler Sharp McKnight has significant experience in this Court and is well-suited to serve as Liaison Counsel in this action. Accordingly, the Court should approve the Pension Funds' selection of Bernstein Litowitz and Saxena White as Lead Counsel and Sanford Sharp Heisler McKnight as Liaison Counsel.

Based on the Pension Funds' significant financial interest in the outcome of this action, and their ability to jointly oversee this litigation and their counsel in a cohesive and coordinated manner, the Pension Funds respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE RELATED ACTIONS[4]

Based in Franklin, Tennessee, Acadia operates a network of more than 250 behavioral healthcare centers across the United States. The Company's facilities include acute inpatient psychiatric facilities, specialty treatment facilities, as well as comprehensive and residential treatment centers. Acadia generates most of its revenue from care provided to patients at its acute inpatient psychiatric facilities. The Company receives payments from various payors including, among others, state and federal government Medicaid programs.

The Related Actions allege that Defendants made false and misleading statements regarding the reasons for Acadia's improving financial results and growing revenues, as well as the Company's quality of patient care. Specifically, throughout the Class Period, the Company

---

[4] The facts are recited from the complaint filed in *City of Fort Lauderdale*, because it asserts the longest-pleaded Class Period and the broadest allegations against Defendants. *See City of Fort Lauderdale*, ECF No. 7-1.

reported strong financial results with growing revenues driven primarily by increases in the number of days patients spent admitted to one of its facilities. Acadia attributed its strong results to greater societal acceptance of treatment for mental health and substance use issues and high demand for its services. Defendants also touted strong revenue trends driven by rate increases across all payors as well as positive coverage and reimbursement trends for Medicaid, Acadia's largest source of revenue. Further, the Company claimed that its acute inpatient psychiatric facilities provided patients with a "high level of care."

In reality, Acadia had booked patients to its facilities and held them against their will beyond the length of time that was medically necessary, as part of a scheme to deceive payors into continuing to pay for those patients' care in order to maximize insurance payouts. As a result of Defendants' alleged misrepresentations, Acadia securities traded at artificially inflated prices throughout the Class Period.

The truth began to emerge on September 1, 2024, when *The New York Times* published an investigative report revealing that Acadia "lured patients into its facilities and held them against their will, even when detaining them was not medically necessary." According to this report, such misconduct was pervasive, occurring in at least 12 of the 19 states in which the Company operates psychiatric facilities. In at least one instance, police were forced to "raid" an Acadia facility to free patients. On this news, the Company's stock price declined by $3.72 per share, or 4.5%.

Then, on September 27, 2024, the Company revealed that it had received a request for information from the United States Attorney's Office for the Southern District of New York, as well as a federal grand jury subpoena from the United States District Court for the Western District of Missouri as part of a criminal investigation relating to the issues raised in *The New York Times*

report.  These disclosures caused the price of Acadia stock to decline by an additional $12.38 per share, or 16.4%.

On October 3, 2024, Acadia received a letter from several members of the U.S. House of Representatives, demanding answers to questions raised by *The New York Times* article published on September 1, 2024.  Specifically, the lawmakers sought information regarding: Acadia's intake processes for certain patients; the average length for an inpatient stay among patients admitted under an emergency hold; and the percentage of patients covered by private insurance, Medicare, and Medicaid.  On this news, the price of Acadia stock declined by $2.09 per share, or 3.5%.

On October 18, 2024, *The New York Times* published a follow up article revealing that the U.S. Department of Veteran's Affairs launched an investigation into whether "Acadia . . . is defrauding government health insurance by holding patients longer than is medically necessary."  The article explained that "[t]he veterans agency is looking into whether Acadia billed insurance programs for patients who were stable enough to be released and did not need intensive patient care" and that "[s]everal former Acadia employees in Georgia and Missouri have also recently been interviewed by agents from the F.B.I. and the inspector general's office of the Health and Human Services Department."  As a result of these disclosures, the price of Acadia stock declined by $7.29 per share, or 12.3%.

Then, on October 30, 2024, Acadia announced its third quarter financial results, reporting lower than expected revenue for the third quarter of 2024, and trimming its full-year 2024 revenue and earnings per share guidance to levels below analyst estimates.  Acadia attributed its lowered full-year 2024 guidance, in part, to slower same-store patient day growth in the month of October driven by recent media scrutiny regarding the Company's improper business practices.  These disclosures caused the price of Acadia stock to decline by $9.39 per share, or 18%.

6

# ARGUMENT

## I. The Pension Funds Are The Most Adequate Plaintiff

The Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure that governs the appointment of a lead plaintiff in class actions arising under the federal securities laws and establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, the Pension Funds believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### A. The Pension Funds' Motion Is Timely

Under the PSLRA, any Class member may move for appointment as lead plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On October 16, 2024, the first of the Related Actions, *Kachrodia*, was filed in this District, asserting a class period of February 28, 2020, to September 26, 2024, inclusive. That same day, counsel for plaintiff in *Kachrodia* published a notice on *Business Wire* alerting investors to the pendency of that action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is December 16, 2024. *See* Sharp Decl., Ex. D. On October 21, 2024, plaintiff in *Kachrodia* filed an amended complaint, asserting an expanded class period of February 28, 2020, to October 18, 2024, inclusive. *See Kachrodia*, ECF No. 7. That same day, counsel for plaintiff in *Kachrodia* published a notice on *Business Wire* alerting investors to the expanded class period and reiterating the December 16, 2024, deadline to

seek appointment as Lead Plaintiff.  *See* Sharp Decl., Ex. E.[5]  Then, on December 11, 2024, Fort Lauderdale P&F filed *City of Fort Lauderdale* in this District, asserting substantially similar claims against Defendants, but asserting a slightly longer Class Period of February 28, 2020, to October 30, 2024.  *See City of Fort Lauderdale*, ECF No. 7-1.[6]  That same day, Saxena White, as counsel for Fort Lauderdale P&F, published a notice on *Globe Newswire* alerting investors to the pendency of that action and reiterating the December 16, 2024, deadline to seek appointment as Lead Plaintiff.  *See* Sharp Decl., Ex. F.  Accordingly, the Pension Funds' motion is timely.[7]

### B.  The Pension Funds Have The Largest Financial Interest In The Relief Sought By The Class

The Pension Funds should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  The Pension Funds incurred losses of approximately $726,339, as calculated on a LIFO basis, on their Class Period purchases of 41,681 shares of Acadia common stock.  *See* Sharp Decl., Exs. A & B. To the best of the Pension Funds' knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, the Pension Funds

---

[5] On October 29, 2024, a substantially similar securities class action was filed against Defendants in this District.  *See Dyar v. Acadia Healthcare Co.*, No. 3:24-cv-01300 (M.D. Tenn.) ("*Dyar*"), ECF No. 1.  On December 3, 2024, this Court consolidated *Dyar* with *Kachrodia*.  *See Kachrodia*, ECF No. 18; *Dyar*, ECF No. 18.

[6] Fort Lauderdale P&F initially filed *City of Fort Lauderdale* in this District on December 10, 2024.  *City of Fort Lauderdale*, ECF No. 1.  The next day, on December 11, 2024, however, Fort Lauderdale P&F filed a corrected complaint.  *City of Fort Lauderdale*, ECF No. 7-1.

[7] The deadline to move for Lead Plaintiff does not change even if another complaint is filed.  *See La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660, at *3 (S.D. Ohio June 19, 2020) (noting that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with [the PSLRA]") (citation omitted).

have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## C. The Pension Funds Otherwise Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff appointment stage, a movant only needs to make "a prima facie showing that it satisfies the typicality and adequacy requirements of [Rule 23]." *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2019 WL 494129, at *2 (M.D. Tenn. Jan 9, 2019). The Pension Funds satisfy the typicality and adequacy requirements.

The Pension Funds' claims are typical of the claims of other Class members. Typicality requires that the claims of the class representatives "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and involve the same legal theory." *Franchi v. SmileDirectClub, Inc.*, 2020 WL 6479561, at *4 (M.D. Tenn. Jan. 27, 2020) (citation and internal quotations omitted). The Pension Funds and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, the Pension Funds (1) purchased Acadia securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged as a result. *See Farrah v. Provectus Biopharmaceuticals, Inc.*, 68 F. Supp. 3d 800, 805 (E.D. Tenn 2014) (finding typicality requirement met when proposed lead plaintiff "purchased [defendant corporation] securities at prices that were artificially inflated by Defendants' misrepresentations and omissions and . . . was damaged through his purchase at these artificially-inflated prices"). Accordingly, the Pension Funds satisfy Rule 23's typicality requirement.

9

The Pension Funds likewise satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy element of Rule 23 is met where the proposed lead plaintiff shows that it has "common interests with unnamed members of the class" and that it "will vigorously prosecute the interests of the class through qualified counsel." *Washtenaw Cnty. Emps' Ret. Sys. v. Dollar Gen. Corp.*, 2024 WL 1468982, at *3 (M.D. Tenn. Apr. 4, 2024) (citation omitted). "The purpose of the adequacy requirement is to ensure there are no conflicts of interest between the purported lead plaintiff and the other class members." *Provectus Biopharmaceuticals*, 68 F. Supp. 3d at 805 (citation omitted). The Pension Funds satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the Class's claims. The Pension Funds' interests are directly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Pension Funds and other Class members.

The Pension Funds have further demonstrated their adequacy through their selection of Bernstein Litowitz and Saxena White as Lead Counsel to represent the Class in this action. As discussed below, Bernstein Litowitz and Saxena White are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to effectively collaborate in prosecuting complex securities class action litigation. Accordingly, the Pension Funds satisfy Rule 23's adequacy requirement.

### D. The Pension Funds Are Precisely The Type Of Lead Plaintiff Envisioned By The PSLRA

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, the Pension Funds are the prototypical Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest

in the litigation. *See In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *6 (W.D. Tenn. Dec. 15, 2010) ("One of the main purposes Congress sought to advance when enacting the PSLRA was to promote the appointment of institutional investors as lead plaintiffs."); *see also* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because such investors are more apt to effectively manage complex securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. The Pension Funds are well suited to fulfill this Congressional intent.

As set forth in their Joint Declaration, the Pension Funds have demonstrated their commitment to working cohesively as a group in the prosecution of this action. *See* Sharp Decl., Ex. C ¶¶ 10-15. The plain text of the PSLRA expressly permits the appointment of a group of class members to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *id.* § 78u-4(a)(3)(B)(i). Accordingly, courts in this District as well as others in the Sixth Circuit and throughout the country routinely appoint as lead plaintiff small, cohesive groups that demonstrate they are capable of vigorously prosecuting the action on behalf of the class. *See, e.g.*, *Dollar Gen.*, 2024 WL 1468982, at *2 (appointing as lead plaintiff two institutional investors that "made a sufficient showing of cohesion"); *Acadia Healthcare*, 2019 WL 494129, at *5 (appointing two pension funds); *Blitz v. AgFeed Indus., Inc.*, 2012 WL 1192814, at *9-10 (M.D. Tenn. Apr. 10, 2012) (appointing group of five investors); *Regions Morgan Keegan*, 2010 WL 5173851, at *13, *15 (appointing group of three investors, and noting that "[b]ecause of this explicit statutory

11

language, most courts now find that groups may serve as lead plaintiff if they demonstrate that they can perform the active supervisory role the PSLRA envisions"); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at \*12 (N.D. Ohio Nov. 28, 2017) (appointing two institutional investors as lead plaintiff); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (appointing "a small group of investors, each of whom is a sophisticated investor" as lead plaintiff); *see also In re Mersho*, 6 F.4th 891, 903 n.4 (9th Cir. 2021) (finding it "is clear from the statutory language" that "a group can serve as a lead plaintiff").

The Pension Funds understand the duties and responsibilities with which a lead plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel, and the Pension Funds have submitted a Joint Declaration attesting to their willingness and ability to fulfill those duties and responsibilities in this case. *See* Sharp Decl., Ex. C; *see also Eshe Fund v. Fifth Third Bancorp*, 2008 WL 11322108, at \*5 (S.D. Ohio Dec. 16, 2008) (appointing group of three investors who "presented sufficient information [in a joint declaration] to show that they are willing to work together in the best interests of the proposed class").

The Pension Funds are each strongly motivated to recover the losses they incurred as a result of Defendants' alleged violations of the federal securities laws. *See* Sharp Decl., Ex. C ¶ 7. Through the course of their evaluation of this case, the Pension Funds each followed their own deliberative processes to determine whether to seek appointment as Lead Plaintiff. *See id*. ¶ 8. Following full consideration of the merits of the claims against Defendants by decision-makers for each institution, and given the magnitude of their losses, the Pension Funds each independently determined to seek a leadership role in this case. *See id*. As part of those processes, the Pension Funds each also considered whether there was an opportunity to work with other institutional

investors in seeking appointment as Lead Plaintiff, and whether doing so would be in each of their respective interests and in the best interests of the Class. *See id.*

Notably, to protect the interests of investors, Fort Lauderdale P&F, through its counsel, Saxena White, filed a complaint expanding the Class Period and including additional allegations that were not asserted in the previously filed complaints. *See id.* ¶ 9. After learning of the complaint filed by Fort Lauderdale P&F, Local 353 and Louisiana Police each independently determined that it would be in their interests and the interests of other Class members for them to seek appointment as Lead Plaintiff jointly with Fort Lauderdale P&F. *See id.* ¶¶ 9-10.

The Joint Declaration also demonstrates why and how the Pension Funds decided to collaborate in this litigation. *See id.* ¶¶ 10-12. Before seeking appointment as Lead Plaintiff, representatives of the Pension Funds participated in a conference call to discuss, among other things: their losses arising from Defendants' alleged misconduct; their shared interest in serving jointly as Lead Plaintiff in this case and their commitment to take an active role in supervising the prosecution of the action; and the benefits that the class would receive from their joint leadership of the case. *See id.* ¶ 12. Based on the Pension Funds' understanding that working together would allow for the sharing of experiences and resources, the Pension Funds believed that partnering would benefit the Class. *See id.* ¶¶ 10-12. That understanding was based, in part, on Local 353's and Fort Lauderdale P&F's experience working with other institutional investors to prosecute securities fraud claims. *See id.* ¶¶ 3, 6. For example, Local 353 currently serves as lead plaintiff, alongside three other institutional investors, in *Plumbers & Pipefitters Local Union #295 v. CareDx, Inc.*, No. 22-cv-3023 (N.D. Cal.), with Saxena White as co-lead counsel. Fort Lauderdale P&F served as lead plaintiff, alongside another institutional investor, in *In re Emergent BioSolutions Inc. Securities Litigation*, No. 21-cv-955 (D. Md.), and recovered $40 million for

13

investors (pending court approval).  Fort Lauderdale P&F also served as lead plaintiff, together with two other institutional investors, in *In re Home Loan Servicing Solutions, Ltd. Securities Litigation*, No. 16-cv-60165 (S.D. Fla.) and recovered $6 million for investors, with Saxena White as lead counsel.  Fort Lauderdale P&F also served as co-lead plaintiff in *In re Ariad Pharmaceuticals, Inc. Securities Litigation*, No. 13-cv-12544 (D. Mass.), and recovered $3.5 million for investors, with Bernstein Litowitz as co-lead counsel.  The Pension Funds' decision to join together to seek appointment as Lead Plaintiff was further informed by their investments and complementary trading in Acadia common stock throughout the Class Period, their ability to share and combine their resources and perspectives as fiduciaries to their respective members, and their shared goals and interests in protecting and maximizing pension fund assets and in enhancing the reliability and transparency of information disseminated by publicly traded corporations.  *See* Sharp Decl., Ex. C ¶ 10.

In sum, the Pension Funds have demonstrated that they have the willingness, resources, ability, and commitment to work closely with one another to oversee the prosecution of this action, supervise their proposed Lead Counsel, and obtain the best possible recovery for the Class.  *See Regions Morgan Keegan*, 2010 WL 5173851, at *13 (appointing group of investors that submitted joint declaration demonstrating that the group's members "have spoken with each other outside the presence of counsel and have established common goals for the litigation and a litigation strategy"); *Cardinal Health*, 226 F.R.D. at 307 (appointing group that submitted a joint declaration assuring the court that "its members have indeed established a cohesive relationship").

## II.    The Court Should Approve The Pension Funds' Selection Of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  "Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of

the class." *Walker v. L Brands, Inc.*, 2019 WL 10733381, at *4 (S.D. Ohio Oct. 16, 2019) (citation omitted).

The Pension Funds have selected Bernstein Litowitz and Saxena White to serve as Lead Counsel for the Class. As set forth in their respective firm résumés, Bernstein Litowitz and Saxena White have extensive experience prosecuting complex litigation on behalf of aggrieved shareholders. *See* Sharp Decl., Exs. G (Bernstein Litowitz Firm Résumé) & H (Saxena White Firm Résumé). Indeed, Bernstein Litowitz and Saxena White have a long history of working together in the prosecution of securities class actions. For example, Bernstein Litowitz and Saxena White served together as co-lead counsel in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.), and secured a $210 million recovery for the class—the second-largest securities class action recovery in Delaware history. Bernstein Litowitz and Saxena White also successfully served as co-lead counsel in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.) (recovering $73 million for the class); *In re James River Group Holdings, Ltd. Securities Litigation*, No. 21-cv-00444 (E.D. Va.) (recovering $30 million for the class); *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.) (same); *In re Tower Group International, Ltd. Securities Litigation*, No. 13-cv-5852 (S.D.N.Y.) (recovering $20.5 million for the class); and *In re Merit Medical Systems, Inc. Securities Litigation*, No. 19-cv-2326 (C.D. Cal.) (recovering $18.25 million for the class). Additionally, Bernstein Litowitz and Saxena White currently serve together as co-lead counsel in *Pembroke Pines Firefighters & Police Officers Pension Fund v. Integra Lifesciences Holdings Corporation*, No. 23-cv-20321 (D.N.J.), and *In re Toronto-Dominion Bank/First Horizon Corporation Securities Litigation*, No. 23-cv-02763 (D.N.J.).

Bernstein Litowitz is among the preeminent securities class action law firms in the country and has extensive experience serving as lead counsel in securities class actions, including in this District. *See* Sharp Decl., Ex. G (Bernstein Litowitz Firm Résumé). For example, Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling over $6 billion—the second-largest recovery in securities class action history. Bernstein Litowitz also secured a recovery of $2.425 billion for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), a $1.06 billion recovery for the class in *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), a $1 billion recovery for the class in *In re Wells Fargo & Company Securities Litigation*, No. 20-cv-4494 (S.D.N.Y.), and a $730 million recovery for the class in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.).

Examples in which courts in the Sixth Circuit, including this District, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *New York State Teachers' Retirement System v. General Motors Co.*, No. 14-cv-11191 (E.D. Mich.) (recovering $300 million on behalf of investors); *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, No. 05-md-1725 (E.D. Mich.) (recovering $128 million on behalf of investors); *Sheth v. OM Group Inc.*, No. 02-cv-2163 (N.D. Ohio) (recovering $92 million on behalf of investors); *The Department of the Treasury of New Jersey and Its Division of Investment v. Cliffs Natural Resources Inc.*, No. 14-cv-1031 (N.D. Ohio) (recovering $84 million on behalf of investors); *In re King Pharmaceuticals, Inc. Securities Litigation*, No. 03-cv-77 (E.D. Tenn.) (recovering $38.25 million on behalf of investors); and *In re Accredo Health, Inc. Securities Litigation*, No. 03-cv-2216 (W.D. Tenn.) (recovering $33 million on behalf of investors).

Additionally, Bernstein Litowitz currently serves as lead counsel in *Washtenaw County Employees' Retirement System v. Dollar General Corp.*, No. 23-cv-1250 (M.D. Tenn.).

Likewise, Saxena White has substantial experience prosecuting securities class action and has achieved significant recoveries on behalf of investors as lead or co-lead counsel in major securities class actions throughout the country. *See* Sharp Decl., Ex. H (Saxena White Firm Résumé). The firm has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *Peace Officers Annuity and Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.) (achieving a $135 million recovery); *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.) (achieving a $65 million recovery); *Plymouth County Retirement System v. Patterson Cos., Inc.*, No. 18-cv-871 (D. Minn.) (achieving a $63 million recovery); *Leventhal v. Chegg, Inc.*, No. 21-cv-9953 (N.D. Cal.) (achieving a $55 million recovery, pending final approval); *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.) (achieving a $53.3 million recovery); *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.) (achieving a $50 million recovery); *City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.) (achieving a $35 million recovery); *In re Perrigo Company plc Securities Litigation*, No. 19-cv-70 (S.D.N.Y.) (achieving a $31.9 million recovery); *In re FibroGen, Inc. Securities Litigation*, No. 21-cv-2623 (N.D. Cal.) (achieving a $28.5 million recovery); *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (S.D. Ala.) (achieving a $28 million recovery); and *Teamsters Local 456 Pension Fund v. Universal Health Services Inc.*, No. 17-cv-2817 (E.D. Pa.) (achieving a $17.5 million recovery).

Moreover, the Pension Funds have selected Sanford Heisler Sharp McKnight to serve as Liaison Counsel for the Class. Sanford Heisler Sharp McKnight has significant experience in this District and is well-suited to serve as Liaison Counsel in this action. *See* Sharp Decl., Ex. I

(Sanford Heisler Sharp McKnight Firm Résumé). Indeed, prior to joining Sanford Heisler Sharp McKnight and becoming the firm's Co-Vice Chairman, Kevin H. Sharp served as District Judge for the U.S. District Court for the Middle District of Tennessee from May 2011 to April 2017, including service from 2014 to 2017 as Chief Judge. In addition, Sanford Heisler Sharp McKnight currently serves as Liaison Counsel in another securities class action pending in this District, *Washtenaw County Employees' Retirement System v. Dollar General Corp.*, No. 23-cv-1250 (M.D. Tenn.), in which Bernstein Litowitz is serving as lead counsel. Accordingly, Sanford Heisler Sharp McKnight is well-qualified to serve as Liaison Counsel in this action.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve the Pension Funds' selection of Bernstein Litowitz and Saxena White as Lead Counsel and Sanford Heisler Sharp McKnight as Liaison Counsel for the Class.

## III. The Related Actions Should Be Consolidated

There are currently two Related Actions pending in this District against Defendants:

| Caption | Civil No. | Date Filed |
|---|---|---|
| *Kachrodia v. Acadia Healthcare Company, Inc. et al.* | 3:24-cv-01238 | October 16, 2024 |
| *City of Fort Lauderdale Police and Firefighters' Retirement System v. Acadia Healthcare Company, Inc. et al.* | 3:24-cv-01447 | December 10, 2024 |

Rule 42(a) grants broad discretion to courts to consolidate cases that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). "Courts have found that consolidation is particularly appropriate in securities class action litigation." *French v. CBL & Assocs. Properties, Inc.*, 2016 WL 7668501, at *1 (E.D. Tenn. Sept. 26, 2016). The Related Actions present substantially similar factual and legal issues because they allege claims under Sections 10(b) and

20(a) of the Exchange Act against the same Defendants, premised on similar alleged misrepresentations made during similar periods of time. While *City of Fort Lauderdale* asserts a slightly longer class period as compared to *Kachrodia*, this minor difference does not preclude consolidation. *See CBL & Assocs.*, 2016 WL 7668501, at *1 (noting "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation") (citation omitted). Therefore, consolidation of the Related Actions is appropriate under Rule 42(a). *See SmileDirectClub*, 2020 WL 6479561, at *3 (consolidating three securities class actions that shared "common questions of law and fact" because "their consolidation would promote the economy and convenience of the Court and of the Parties").

## CONCLUSION

For the reasons discussed above, the Pension Funds respectfully request that the Court: (1) appoint them as Lead Plaintiff; (2) approve their selection of Bernstein Litowitz and Saxena White as Lead Counsel and Sanford Heisler Sharp McKnight as Liaison Counsel for the Class; (3) consolidate the Related Actions; and (4) grant any such further relief as the Court may deem just and proper.

Dated: December 16, 2024

Respectfully submitted,

**SANFORD HEISLER SHARP**
 **MCKNIGHT, LLP**

*/s/ Kevin H. Sharp*
Kevin H. Sharp, BPR No. 016287
Brent A. Hannafan, BPR No. 025209
Kristi S. McGregor, GA Bar No. 674012
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7001

19

Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
bhannafan@sanfordheisler.com
kmcgregor@sanfordheisler.com

*Liaison Counsel for Proposed Lead Plaintiff the Pension Funds and Proposed Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Hannah Ross
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

**SAXENA WHITE P.A.**

Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the Pension Funds and Proposed Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

Robert D. Klausner
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com

20

*Additional Counsel for City of Fort Lauderdale*
*Police and Firefighters' Retirement System*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 16, 2024, a true and correct copy of the **Memorandum of Law in Support of the Motion of the Pension Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of Related Actions** was filed electronically via the Court's CM/ECF system. Notification of such electronic filing was served on all counsel of record listed below via the Court's electronic notification system:

Laurence M. Rosen
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
lrosen@rosenlegal.com
pkim@rosenlegal.com

Paul Kent Bramlett
Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
pknashlaw@aol.com
robert@bramlettlawoffices.com

James Gerard Stranch , IV
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com

Stefan H. Atkinson
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
satkinson@cravath.com

Sandra C. Goldstein
601 Lexington Ave.
New York, NY 10022
sandra.goldstein@kirkland.com

Javier Bleichmar
Bleichmar Fonti & Auld LLP
300 Park Avenue, Suite 1301
New York, NY 10022
jbleichmar@bfalaw.com

Adam C. McCall
Bleichmar Fonti & Auld LLP
1330 Broadway, Suite 630
Oakland, CA 94612
amccall@bfalaw.com

Elizabeth O. Gonser
Riley, Warnock & Jacobson
1906 West End Avenue
Nashville, TN 37203
egonser@rjfirm.com

Kevin M. Neylan , Jr.
Kirkland & Ellis (NY)
601 Lexington Avenue
New York, NY 10022-4611
kevin.neylan@kirkland.com

Milton S. McGee , III
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
tmcgee@rjfirm.com

*/s/ Kevin H. Sharp*
Kevin H. Sharp, BPR No. 016287

Sanford Heisler Sharp McKnight, LLP
611 Commerce Street, Suite 3100
Nashville, TN 37203
ksharp@sanfordheisler.com