UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| ANURAG KACHRODIA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>ACADIA HEALTHCARE COMPANY, INC., et al.,<br><br>    Defendants. | Civil Action No. 3:24-cv-01238 (Consolidated)<br><br>Chief Judge William L. Campbell, Jr.<br>Magistrate Judge Jeffery S. Frensley<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL |

## I.  INTRODUCTION

Presently pending before this Court is a consolidated securities class action brought on behalf of purchasers of publicly traded Acadia Healthcare Company, Inc. ("Acadia" or the "Company") securities between February 28, 2020 and October 18, 2024 (the "Class Period") for alleged violations of the Securities Exchange Act of 1934 (the "1934 Act").[1]  In securities class actions such as this, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to "consider any motion made by a purported class member in response to the notice" and "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most

---

[1] On December 3, 2024, the Court consolidated *Kachrodia v. Acadia Healthcare Co., Inc.*, No. 3:24-cv-01238 (filed October 16, 2024), and *Dyar v. Acadia Healthcare Co., Inc.*, No. 3:24-cv-01300 (filed October 29, 2024). *See* ECF 18.  On December 10, 2024 – less than one week before the lead plaintiff deadline expired – a third complaint alleging violations of the 1934 Act was filed on behalf of purchasers of Acadia securities, which complaint altered the Class Period, extending the start date of the Class Period back 20 days to February 8, 2020 and forward 12 days to October 30, 2024. *City of Ft. Lauderdale Police and Fire Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:24-cv-01447 (filed December 10, 2024).  Pursuant to the consolidation order, the *City of Ft. Lauderdale* Action "shall be consolidated into th[is] Consolidated Action."  ECF 18 at ¶1.

- 1 -

capable of adequately representing the interests of class members." *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

Here, California Public Employees' Retirement System ("CalPERS") should be appointed as lead plaintiff as it: (1) timely filed its motion; (2) has a substantial financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, CalPERS' selection of Robbins Geller to serve as lead counsel should be approved as the Firm possesses extensive experience prosecuting securities class actions and will vigorously represent the interests of class members.

## II. STATEMENT OF FACTS

Founded in 2005 and headquartered in Franklin, Tennessee, Acadia is one of the country's largest providers of for-profit behavioral healthcare services. Through its network of 250 behavioral healthcare facilities in 39 states, Acadia provides inpatient psychiatric hospitals, specialty treatment facilities, residential treatment centers, and outpatient clinics. In fiscal year 2023, Acadia reported $2.9 billion in revenue. The Company's common stock trades on the NASDAQ under the ticker symbol ACHC.

The Company generates the bulk of its revenue from operating acute inpatient psychiatric facilities, which, according to Acadia, provide a high level of care to stabilize patients. In the years following the start of the COVID-19 pandemic, Acadia's revenue and stock price soared as individuals across the nation increasingly sought help for anxiety and depression. Since the lows of the pandemic, the Company's revenue rocketed and its stock price increased more than six fold.

As alleged in this consolidated action, unbeknownst to investors Acadia's reported success was built on a pattern and practice of illegal conduct, including holding patients against their will, lying to insurers about the medical necessity of keeping those patients, and willfully neglecting and abusing patients. The Complaints allege that Acadia and four of its current and former top

- 2 -

executives misled investors about the Company's medical practices, admissions, length of stay, and billing practices. Specifically, Acadia repeatedly discussed regulatory and litigation risks in hypothetical terms when such risks had already manifested.

Following years of couching these regulatory and litigation risks as mere possibilities, the truth was revealed in a shocking series of investigative news articles published by *The New York Times*, criminal and civil investigations leveled by multiple governmental agencies and legal jurisdictions, and a multi-million-dollar settlement agreement with the U.S. Department of Justice ("DOJ").

On September 1, 2024, *The New York Times* published an article entitled "How a Leading Chain of Psychiatric Hospitals Traps Patients," which revealed that *The New York Times'* "investigation found that some of that success was built on a disturbing practice: Acadia has lured patients into its facilities and held them against their will, even when detaining them was not medically necessary." ECF 7 at ¶¶62-63. On this news, the price of Acadia stock fell more than 4%.

Then, on September 27, 2024, Acadia revealed that "[o]n September 24, 2024, Acadia . . . received a voluntary request for information from the United States Attorney's Office for the Southern District of New York as well as a grand jury subpoena from the United States District Court for the Western District of Missouri (W.D.Mo.) related to its admissions, length of stay and billing practices," further disclosing that "Acadia anticipates receiving similar document requests from the U.S. Securities and Exchange Commission and may receive additional document requests from other government agencies." ECF 7 at ¶87. On this news, the price of Acadia stock fell more than 16%.

Then, on October 18, 2024, the *New York Times* published an article entitled "Veterans Dept. Investigating Acadia Healthcare for Insurance Fraud," stating that the Veterans Affairs Department

- 3 -

is investigating whether Acadia "is defrauding government health insurance programs by holding patients longer than is medically necessary." ECF 7 at ¶89. The article also stated that "[s]everal former Acadia employees in Georgia and Missouri have also recently been interviewed by agents from the F.B.I. and the inspector general's office of the Health and Human Services Department." *Id.* On this news, the price of Acadia stock declined a further 12%.

As a result of defendants' alleged wrongful acts and omissions and the decline in the value of Acadia's securities, class members have suffered significant losses and damages.

## III. ARGUMENT

### A. CalPERS Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice issued in connection with the filing of the first-filed complaint in this consolidated action was published on October 16, 2024. *See* Declaration of Christopher M. Wood in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Wood Decl."), Ex. A.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

4908-7490-0741.v2

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Franchi v. SmileDirectClub, Inc.*, 2020 WL 6479561, at *3 (M.D. Tenn. Jan. 27, 2020). CalPERS meets these requirements and should be appointed Lead Plaintiff.

### 1.      CalPERS' Motion Is Timely

The October 16, 2024, statutory notice published in connection with the filing of the initial *Kachrodia* complaint advised class members of the pendency of this action, the claims asserted, and the right to move the Court for appointment as lead plaintiff within 60 days, or by December 16, 2024. *See* Wood Decl., Ex. A; 15 U.S.C. §78u-4(a)(3)(A). CalPERS' motion is timely filed and it is eligible for appointment as lead plaintiff.

### 2.      CalPERS Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification and loss charts, CalPERS suffered a Class Period loss of more than $8 million, as calculated under the first-in, first-out loss methodology. *See* Wood Decl., Exs. B, C.[2] To the best of its counsel's knowledge, there are no other named plaintiffs with a larger financial interest. Therefore, CalPERS satisfies the PSLRA's prerequisite of having the largest financial interest.

---

[2]   CalPERS also suffered a loss of approximately $5 million under the last-in, first-out methodology. *See* Wood Decl., Ex. C. CalPERS' FIFO and LIFO loss numbers are significantly greater in the class period advanced at the eleventh hour in the *City of Ft. Lauderdale Police* Action. *See* n.1., *supra.*

- 5 -

### 3. CalPERS Is Typical and Adequate of the Putative Class

"The next step is to determine whether [CalPERS] satisfies the typicality and adequacy factors set forth in Rule 23." *Franchi*, 2020 WL 6479561, at *4. The Court should easily conclude that CalPERS meets these requirements.

"In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 WL 1071281, at *37 (M.D. Tenn. Mar. 29, 2012) (certifying securities class action) (citation omitted). "Inquiry into the adequacy elements requires the Court to consider whether '"(1) the representative[s] . . . have common interests with unnamed members of the class, and (2) it [] appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel."'" *Id*. (citation omitted).

CalPERS purchased hundreds of thousands of shares of Acadia common stock at inflated prices, at a wide range of dates throughout the Class Period, in amounts large and small. CalPERS' claims are typical of those of other class members because its claims and the claims of other class members arise out of the same course of events and are based on the same legal theories. CalPERS' significant financial interest ensures it will vigorously represent the class. As one of the nation's foremost institutional investors, CalPERS is precisely the type of investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA. *See generally In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members.").

4908-7490-0741.v2

CalPERS is the largest state public pension fund in the United States, with more than 2 million members and over $500 billion in assets under management. CalPERS has experience successfully serving as a lead plaintiff in prior securities class action cases, including in *In re UnitedHealth Grp., Inc. Sec. Litig.*, No. 0:06-cv-01691 (D. Minn.), where CalPERS recovered $925.5 million for investors and obtained important corporate reforms. As an institutional investor with significant experience serving as lead plaintiff and class representative in securities class actions, CalPERS will utilize its resources and experience to ensure vigorous and competent advocacy for the benefit of the putative class.

Because CalPERS filed a timely motion, has a large financial interest in the relief sought by the class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff."

## B. The Court Should Approve CalPERS' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). CalPERS has selected Robbins Geller to serve as Lead Counsel.

Robbins Geller, a 200-lawyer firm with an office in this District, regularly represents institutional and individual investors in securities litigation in this District and across the country.[3] The judges of this Court have noted Robbins Geller's reputation for excellence. *See, e.g.*, *Franchi*, 2020 WL 6479561, at *5 ("On more than one occasion, this Court has previously found Robbins Geller to be well-qualified to represent a class in a securities action."); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *6 (M.D. Tenn. Jan. 9, 2019) (appointing

---

[3] For a detailed description of Robbins Geller's track record, resources, and attorneys, please *see* http://www.rgrdlaw.com. A hard copy of the Firm's resume is available upon the Court's request, if preferred.

4908-7490-0741.v2

Robbins Geller as lead counsel, finding that "this Court has previously found Robbins Geller to be 'well qualified' for the task of representing a class in a securities action"); *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122 (M.D. Tenn. June 26, 2017) (certifying class and appointing Robbins Geller as class counsel); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2010 WL 1790763, at *4 (M.D. Tenn. Apr. 30, 2010) (finding Robbins Geller lawyers to be "well qualified and experienced to represent the class"). Notably, Robbins Geller lawyers involved in this case are responsible for obtaining each of the three largest securities fraud class action recoveries ever obtained in this District. *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, ECF 567 at 12-13 (M.D. Tenn. Apr. 11, 2016) (in granting final approval to a $215 million recovery, the largest securities class action recovery ever in Tennessee, while recognizing that Robbins Geller and its local counsel "were gladiators" and expressing the court's "appreciat[ion for] the work that you all have done on this"). Robbins Geller has also obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits, as well as a 2019 PSLRA class action trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.[4]

---

[4]  *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

- 8 -

If CalPERS is appointed, Robbins Geller partner Sam Sheldon will serve as lead trial counsel in this case. Mr. Sheldon specializes in securities fraud, healthcare litigation, and trials. As a federal prosecutor and civil litigator, Mr. Sheldon has tried over 25 cases and has previously served as Chief of the Health Care Fraud Unit in the DOJ Criminal Division in Washington, D.C., where he oversaw the prosecution of federal health care fraud throughout the United States. Most recently, Mr. Sheldon was a member of the Robbins Geller trial team that successfully obtained a $434 million recovery for investors several weeks before trial in *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388-RDB (D. Md.). CalPERS' prosecution team will also include Jerry Martin, who served as a Presidentially appointed United States Attorney, and has considerable healthcare litigation experience, having chaired the Attorney General's Healthcare Fraud Working Group that set the DOJ's policies and priorities, and Bishop Partnoy LLP, whose attorneys have decades of experience working as professors, litigators, bankers, experts, consultants, and government officials. Thus, the Court can be assured that by approving CalPERS' selection of counsel, the putative class will receive the highest caliber of representation.

## IV. CONCLUSION

CalPERS satisfies each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, CalPERS respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Robbins Geller as Lead Counsel for the class.

DATED: December 16, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
CHRISTOPHER M. WOOD
JERRY E. MARTIN

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

- 9 -

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
cwood@rgrdlaw.com
jmartin@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SAM S. SHELDON
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
drobbins@rgrdlaw.com
ssheldon@rgrdlaw.com
dmyers@rgrdlaw.com

BISHOP PARTNOY LLP
FRANK PARTNOY
1717 K Street, NW Suite 900
Washington, DC  20006
Telephone:  202/787-5769
Frank@bishoppartnoy.com

Counsel for Proposed Lead Plaintiff

4908-7490-0741.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 16, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
Email:  cwood@rgrdlaw.com

# Mailing Information for a Case 3:24-cv-01238 Kachrodia v. Acadia Healthcare Company, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stefan H. Atkinson**
  satkinson@cravath.com

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Sandra C. Goldstein**
  sandra.goldstein@kirkland.com

- **Elizabeth O. Gonser**
  egonser@rjfirm.com,dgibby@rjfirm.com,bmoore@rjfirm.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Adam C. McCall**
  amccall@bfalaw.com

- **Milton S. McGee , III**
  tmcgee@rjfirm.com,dgibby@rjfirm.com

- **Kevin M. Neylan , Jr**
  kevin.neylan@kirkland.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **James Gerard Stranch , IV**
  gstranch@stranchlaw.com,complexlit@stranchlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Ross                Shikowitz
Bleichmar Fonti & Auld LLP
75 Virginia Road
White Plains, NY 10603
```