# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| ANURAG KACHRODIA, Individually and on Behalf of All Others Similarly Situated, | |
| *Plaintiff,* | Case No.: 3:24-cv-01238 (Consolidated) |
| v. | |
| ACADIA HEALTHCARE COMPANY, INC. et al., | |
| *Defendants.* | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

# CONTENTS

**I.      Plaintiff's "Scheme-to-Inflate-Profits" Claim Fails** .......................................................... **1**

    A.      The Allegations Do Not Support a Strong Inference of Scienter. .......................... 1

    B.      Plaintiff Fails to Plead a Companywide Scheme to Inflate Profits ......................... 5

    C.      Plaintiff Fails to Plead a Misstatement. .................................................................. 8

    D.      Plaintiff Fails to Plead Loss Causation for Post-*NYT* Article Stock
        Declines .................................................................................................................... 9

**II.     Plaintiff's *Inman* Claim Fails** ..................................................................................... **10**

**Page(s)**

**Cases**

*In re Am. Serv. Grp.*,
   2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009) ..............................................................7, 8, 10

*Bond v. Clover Health*,
   587 F.Supp. 3d 641 (M.D. Tenn. 2022)...................................................................................2

*Bondali v. Yum! Brands*,
   620 F. App'x 483 (6th Cir. 2015) ...........................................................................................9

*In re Cardinal Health*,
   426 F. Supp. 2d 688 (S.D. Ohio 2006) ...................................................................................5

*In re CBL Prop. Sec. Litig.*,
   2022 WL 1405415 (E.D. Tenn. May 3, 2022)........................................................................10

*Chamberlain v. Reddy Ice*,
   757 F. Supp. 2d 683 (E.D. Mich. 2010).................................................................................2, 9

*City of Monroe Emps. Ret. Sys. v. Bridgestone*,
   399 F.3d 651 (6th Cir. 2005) ..................................................................................................8

*Doe v. Bredesen*,
   507 F.3d 998 (6th Cir. 2007) ..................................................................................................1, 8

*Edwards v. McDermott Int'l*,
   2022 WL 3927828 (S.D. Tex. Aug. 30, 2022) ........................................................................5

*In re Envision Sec. Litig.*,
   2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) .....................................................................3

*In re Ferro Corp.*,
   2007 WL 1691358 (N.D. Ohio June 11, 2007)........................................................................5

*Fidel v. Farley*,
   392 F.3d 220 (6th Cir. 2004) ..................................................................................................4, 10

*In re FirstEnergy*,
   2022 WL 681320 (S.D. Ohio Mar. 7, 2022)............................................................................5

*Ft. Lauderdale Gen. Emp. Ret. v. Oao*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011).....................................................................................3

Case 3:24-cv-01238   Document 71   Filed 12/22/25   Page 3 of 19 PageID #: 1625

*Garbaccio v. Starbucks*,
2025 WL 3228275 (W.D. Wash. Nov. 19, 2025) ................................................................6

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols.*,
2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011) ............................................... *passim*

*Grae v. Corr. Corp. of Am.*,
2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017) ............................................... *passim*

*Hurley v. IRS*,
2025 WL 2689625 (6th Cir. Aug. 12, 2025) ...................................................................7

*Ind. Pub. Ret. Sys. v. SAIC*,
818 F.3d 85 (2d Cir. 2016) .............................................................................................10

*Ind. State Dist. Council v. Omnicare*,
583 F.3d 935 (6th Cir. 2009) ........................................................................................1, 8

*Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*,
510 F. Supp. 3d 583 (M.D. Tenn. 2020) ........................................................................3

*Kolominsky v. Root*,
100 F.4th 675 (6th Cir. 2024) ..........................................................................................9

*Kyrstek v. Ruby Tuesday*,
2016 WL 1274447 (M.D. Tenn. Mar. 31, 2016) ............................................................2

*Lim v. Hightower*,
2025 WL 2965692 (6th Cir. Oct. 21, 2025) ...................................................................8

*Marlar v. BWXT Y-12*,
525 F.3d 439 (6th Cir. 2008) ........................................................................................5, 6

*Marshall v. Wayne Cnty.*,
2023 WL 2707222 (6th Cir. Mar. 30, 2023) ..................................................................8

*McCann v. Hy-Vee*,
663 F.3d 926 (7th Cir. 2011) ........................................................................................10

*Merck v. Reynolds*,
559 U.S. 633 (2010) .......................................................................................................10

*Norfolk Cnty. Ret. Sys. v. Cmty. Health*,
877 F.3d 687 (6th Cir. 2017) ..........................................................................................9

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortgage*,
2025 WL 2494544 (N.D. Ohio Aug. 29, 2025) .............................................................4

*In re Omnicare Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ...................................................................................1, 2, 5

*P.R. Diamonds v. Chandler*,
364 F.3d 671 (6th Cir. 2004), *abrogated on other grounds by Matrixx
Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ....................................................2

*Pittman v. Unum Grp.*,
861 F. App'x 51 (6th Cir. 2021) .........................................................................2, 3, 4

*In re Ply Gem Holdings Sec. Litig.*,
135 F. Supp. 3d 145 (S.D.N.Y. 2015).........................................................................6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*,
759 F.3d 1051 (9th Cir. 2014) ....................................................................................2

*Pompliano v. Snap Inc.*,
No. 2:17-cv-03664, Dkt. 1 ........................................................................................10

*Porter v. Graftech Int'l*,
2025 WL 2393087 (N.D. Ohio Aug. 18, 2025) .......................................................2, 3

*In re Silver Wheaton Sec. Litig.*,
2016 WL 3226004 (C.D. Cal. June 6, 2016) .............................................................10

*Staehr v. Hartford*,
47 F.3d 406 (2d Cir. 2008)........................................................................................10

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia*,
2021 WL 195370 (M.D. Tenn. Jan. 20, 2021)............................................................3

*St. Clair Emps. Ret. Sys. v. Acadia*,
2025 WL 2940714 (M.D. Tenn. Oct. 16, 2025) .............................................. *passim*

*Stein v. U.S. Xpress*,
2020 WL 3584800 (E.D. Tenn. June 30, 2020)...........................................................3

*In re Sunbeam Sec. Litig.*,
89 F. Supp. 2d 1326 (S.D. Fla. 1999) .........................................................................2

*Teamsters Loc. 237 v. ServiceMaster Glob. Holdings*,
83 F.4th 514 (6th Cir. 2023) ..................................................................................2, 3, 5

*Tellabs v. Makor Issues & Rights*,
551 U.S. 308 (2007)....................................................................................................5

**TABLE OF ABBREVIATIONS**

| Term | Meaning |
|---|---|
| ¶ | Paragraphs of the AC. |
| AC | Plaintiff's consolidated Amended Complaint, Dkt. 55. |
| Acadia | Acadia Healthcare Company, Inc. |
| Annex A | Annex A to the Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 63-1. |
| Annex B | Annex B to the Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 63-2. |
| Annex C | Annex C to the Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 63-3. |
| ASC 450 | Financial Accounting Standards Board Accounting Standard Codification 450. |
| *ASG* AC ¶ | Paragraphs of the amended complaint in *In re Am. Serv. Grp.*, No. 3:06-cv-0323 (M.D. Tenn.), Dkt. 60. |
| *CCA* AC ¶ | Paragraphs of the amended complaint in *Grae v. Corrections Corp. of Am.*, No. 3:16-cv-2267 (M.D. Tenn.), Dkt. 57. |
| CD | Corrective disclosure. |
| Defendants | Acadia, Debra K. Osteen, Christopher R. Hunter, David M. Duckworth, and Heather Dixon. |
| DOJ | Department of Justice. |
| *Envision* AC ¶ | Paragraphs of the amended complaint in *In re Envision Sec. Litig.*, No. 3:17-cv-01112 (M.D. Tenn.), Dkt. 88. |
| Ex. | Exhibits attached to the Declarations of Alexander J. Rodney, dated September 8, 2025, and December 22, 2025. |
| FCA | False Claims Act. |
| Individual Defendants | Debra K. Osteen, Christopher R. Hunter, David M. Duckworth, and Heather Dixon. |
| *Inman* | The case captioned *Inman v. Garcia*, D-117-CV-2019-00136 (First Judicial Dist. Ct., Rio Arriba Cnty., N.M.). |
| MTD | Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 63. |

| Term | Meaning |
| --- | --- |
| *NYT* | *The New York Times.* |
| *NYT* **article** | Article published in *The New York Times* by Jessica Silver-Greenberg & Katie Thomas on September 1, 2024, titled *How a Leading Chain of Psychiatric Hospitals Traps Patients.* |
| **Opp.** | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Dkt. 69. |
| *PSI* **AC ¶** | Paragraphs of the amended complaint in *Garden City Empls.' Ret. Sys. v. Psychiatric Solutions*, No. 3:09-cv-00882 (M.D. Tenn.), Dkt. 109. |
| **PSLRA** | Private Securities Litigation Reform Act, 15 U.S.C. §78u-4. |
| *St. Clair* **AC ¶** | Paragraphs of the amended complaint in *St. Clair Cnty. Emps' Ret. Sys. v. Acadia*, No. 3:18-cv-00988 (M.D. Tenn.), Dkt. 39. |
| *St. Clair* **Dkt.** | Entries on the docket in *St. Clair Cnty. Emps' Ret. Sys. v. Acadia*, No. 3:18-cv-00988 (M.D. Tenn.). |

Acadia's subsidiaries operate 250+ locations treating 75,000 patients daily. Yet over a five-year class period, Plaintiff alleges only a handful of incidents at five locations, all at an operational level far below Defendants. *In re Omnicare Sec. Litig.*, 769 F.3d 455, 476 (6th Cir. 2014) (rejecting corporate fraud claim based on "low-level employee['s]" knowledge). At most, Plaintiff alleges the exact sort of incidents Acadia told investors occurred from time to time. MTD 3. Plaintiff gestures at more by parroting the *NYT*'s conclusions. But it cannot plead securities fraud by repackaging unparticularized journalism. Plaintiff does not allege anything materially greater than Acadia disclosed, let alone a companywide scheme, that Defendants knew of a scheme, or misstated anything. *Ind. State Dist. Council v. Omnicare*, 583 F.3d 935, 946 (6th Cir. 2009) ("steeply discount[ing]" allegations not tied to defendants). The AC should be dismissed.

## I. PLAINTIFF'S "SCHEME-TO-INFLATE-PROFITS" CLAIM FAILS

### A. The Allegations Do Not Support a Strong Inference of Scienter.

Plaintiff's failure to plead scienter is fatal. Each incident that supposedly supports the scheme is alleged only at the individual facility level; there are *zero* allegations that Defendants, at the corporate level, ordered the conduct. MTD 13. Plaintiff has no response, Opp. 24, and thus waives any contrary argument. *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007). Plaintiff also says that Defendants are liable because they monitored metrics. But there are *zero* allegations about how the metrics—admissions, length of stay, patient days—could have revealed the alleged fraud. MTD 17. Again, no response. Opp. 24. The most compelling inference is nonculpable: Defendants didn't know of the alleged scheme, because it didn't exist. Plaintiff's responses fail.

*First*, Plaintiff argues that typical corporate statements—*i.e.* Acadia was "focused" on quality and had "rigorous internal controls"—must mean that Defendants "carefully monitor[ed]" the alleged scheme. Opp. 24-25. But this Circuit (considering Plaintiff's exact argument) held that such "statements of broad operational plans or goals...do not show knowledge or reckless

disregard of the discrete and particularized alleged [fraud]." *P.R. Diamonds v. Chandler*, 364 F.3d 671, 689 (6th Cir. 2004). Plaintiff also claims that Defendants' denial of the *NYT* article's allegations shows scienter. Opp. 25-26. But the law does not impose such a catch-22 on defendants. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical*, 759 F.3d 1051 (9th Cir. 2014) (no scienter despite defendants' denial).[1] And Plaintiff's contention that "regulatory records," "inspection reports," or "internal documentation" corroborate the scheme, Opp. 1, 25-26, also fails because Plaintiff never says what the records are, when they were created, who created them, what they said, or that Defendants saw them. *Omnicare*, 769 F.3d at 482; *accord Teamsters Loc. 237 v. ServiceMaster Glob. Holdings*, 83 F.4th 514, 533 (6th Cir. 2023). By contrast, Plaintiff's cases all involved allegations that the internal metrics revealed specific ***concealed*** facts.[2] Plaintiff can't plead such facts with particularity, as it simply parrots the *NYT's* vague conclusions. MTD 9-11.

**Second**, Plaintiff argues that "quality of care [is] a core operation for companies like Acadia," so "by extension, scienter [is] adequately pled." Opp. 26. But this Circuit has repeatedly rejected Plaintiff's "core operations" theory. *See, e.g.*, *Teamsters*, 83 F.4th at 531 ("intimate[] familiar[ity] with a core component of [defendants'] business does little to suggest fraudulent intent"); *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021) (same); *see also Porter v. Graftech Int'l*, 2025 WL 2393087, at *37 (N.D. Ohio Aug. 18, 2025) ("The Sixth Circuit has

---

[1] As Plaintiff's own cases demonstrate, it might be different if there were detailed allegations that Defendants knew the denials were false. Opp. 25 (citing, *e.g.*, *Chamberlain v. Reddy Ice*, 757 F. Supp. 2d 683, 713 (E.D. Mich. 2010) (defendants knew of unlawful agreements, which they publicly denied); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1338-39 (S.D. Fla. 1999) ("practices...were instituted by [defendants]," discrediting their denial of the practices); *Bond v. Clover Health*, 587 F. Supp. 3d 641, 668 (M.D. Tenn. 2022) (defendants "conced[ed] (but plac[ed] a positive spin)" on allegations). But the AC pleads no such knowledge. MTD 13, 17.

[2] *Grae v. Corr. Corp. of Am.* ("*CCA*")*,* 2017 WL 6442145, at *20 (M.D. Tenn. Dec. 18, 2017) (witness "confirm[ed] that [the monitored information] included the [concealed] results" defendants "routinely received"); *Kyrstek v. Ruby Tuesday*, 2016 WL 1274447, at *9 (M.D. Tenn. Mar. 31, 2016) (defendants monitored financial data, the concealment of which was the fraud).

explicitly rejected such a 'core operations' theory."). Plaintiff ignores these controlling cases and instead relies on cases pre-dating *Teamsters* and *Pittman*.[3] Even if those cases are still good law, they do not help Plaintiff. The presumption of executives' knowledge has never extended to all aspects of a core business; it applied only if the alleged fraud was "nearly all" of the business. *Stein v. U.S. Xpress*, 2020 WL 3584800, at *39 (E.D. Tenn. June 30, 2020). "Without such allegations, there is no cognizable limit to the scope of the 'core operations' inference…which would potentially sweep in knowledge of *all*…operational details." *Ft. Lauderdale Gen. Emp. Ret. v. Oao*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011)).[4] Plaintiff alleges no facts showing how much unlawful detainment (or understaffing) impacts Acadia's revenue, let alone that it is "nearly all" of it.[5] *Stein*, 2020 WL 3584800, at *39 (retention issues affecting 120 of 6,900 drivers not "sufficiently core" to delivery company). Acadia's executives are not presumed to know everything about 75,000+ daily patients and their care. *Id.* ("However important drivers may be…[d]efendants cannot be fairly presumed to know everything about [them].").

**Third**, Plaintiff tries to plead scienter under the *Helwig* factors. Opp. 30. Plaintiff ignores five of the nine factors, and instead relies solely on Factors 2, 5, 6, and 9. *Id.* None support scienter.

**Factors 2 & 6 (no divergent internal reports/disregarded facts)**. Plaintiff fails to allege

---

[3] Opp. 26 (citing *Garden City Emps.' Ret. Sys. v. Psychiatric Sols.* ("*PSI*"), 2011 WL 1335803 (M.D. Tenn. Mar. 31, 2011); *CCA*, 2017 WL 6442145; *In re Envision Sec. Litig.*, 2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, 510 F. Supp. 3d 583, 618 (M.D. Tenn. 2020)). The motion to dismiss decision in *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia*, 2021 WL 195370 (M.D. Tenn. Jan. 20, 2021), was also pre-*Pittman*.

[4] Plaintiff's cases are in accord. *Envision*, 2019 WL 6168254, at *22 (subsidiary accounted for 67% of overall revenue, and fraud accounted for 35% of subsidiary's revenue); *PSI*, 2011 WL 1335803, at *56 (defendant admitted he was "personally involved" in tracking "real-time incidents": *i.e.*, the fraud); *Ghosn*, 510 F. Supp. 3d at 617-18 (defendant was responsible for corporate governance controls, including "director compensation," which was the alleged fraud). In *CCA*, the "core operations" theory was premised on a confidential witness who stated that **defendants** had **actual knowledge** of the alleged fraud (unlike here). 2017 WL 6442145, at *20.

[5] The AC claims that Acadia generated $1.3B from methadone clinics, but that amount represents all revenue, not the amount derived from allegedly concealed understaffing. *See* ¶45.

Defendants received (or disregarded) reports contradicting their statements. *Supra* 1; MTD 14, 17.

**Factor 5 (no quick settlement of closely related fraud allegations)**. Plaintiff's allegations about other legal proceedings involve conduct ***unrelated*** to the fraud alleged here. MTD 15. And Plaintiff fails to explain the relevance of past discovery issues in other cases, an SEC settlement, or allegations about a Corporate Integrity Agreement. Opp. 28.[6] Instead, Plaintiff focuses on two prior lawsuits it claims are "related": (1) a 2017 False Claims Act ("FCA") case by private relators alleging conduct at 5 facilities in 2014-2017 (referred to misleadingly as a "DOJ lawsuit"), *see* Ex. 29; and (2) the *St. Clair* case in this Court. Opp. 29. Both cases pre-date the class period. *Fidel v. Farley*, 392 F.3d 220, 233 (6th Cir. 2004) (prior fraud claims didn't support scienter); *accord Pittman*, 861 F. App'x at 56. Nor did Defendants quickly settle or conceal them: Both settled after 7 years of litigation. *See* Ex. 29 (FCA action filed in 2017, settled in 2024); *St. Clair* Dkt. 532 at 1-2. These are "not the kind of 'quick settlement[s]' that generate a meaningful inference of scienter." *Pittman*, 861 F. App'x at 56 (settlement after 2.5 years not probative).

**Factor 9 (no unusual compensation)**. Plaintiff alleges that Acadia's CEO and CFO together received, on average, $2.2M in annual performance-based pay for managing a company of $2B+ revenue over a 5-year period. ¶170. But Plaintiff's theory—that pay based on typical financial measures (EBITDA and revenue) shows scienter—is not the law, as it would suggest fraud in nearly every public company. MTD 16-17; *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortgage*, 2025 WL 2494544, at *23 (N.D. Ohio Aug. 29, 2025) ("compensation must create specific benefits tied to the alleged false statements, not just general corporate success"); *Pittman*, 861 F. App'x at 56-57. And unlike Plaintiff's cases, there is nothing unusual here about the

---

[6] Plaintiff asserts there is a "unitary" course of conduct, but that is entirely conclusory (Opp. 29 n.16); Plaintiff cites nothing and identifies no connection between the other incidents—dating years before the relevant period (*see* MTD 15)—and the facts here, let alone the Defendants.

4

compensation amount or circumstances. Opp. 30 (*In re Cardinal Health*, 426 F. Supp. 2d 688, 736 (S.D. Ohio 2006) ($245M in performance-pay); *In re FirstEnergy*, 2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ($80M: 98% of total pay, plus $14M insider trading)). Plaintiff can't just reference "bare numbers with the hope that the mere fact that [d]efendants received compensation will be enough" for scienter. *In re Ferro Corp.*, 2007 WL 1691358, at \*18 (N.D. Ohio June 11, 2007).[7]

### B. Plaintiff Fails to Plead a Companywide Scheme to Inflate Profits.[8]

Plaintiff argues that it can plead a "complex and far-reaching" scheme with just a few examples. Opp. 8-9. Not so. A fraudulent companywide scheme "***must be pleaded with particularity*** **and** the complaint **must also** provide examples of *specific fraudulent* conduct that are *representative* samples of the scheme." *Marlar v. BWXT Y-12*, 525 F.3d 439, 444-45 (6th Cir. 2008) (emphasis added). Over the entire 5-year Class Period, the AC alleges only a handful of incidents at 5 facilities. MTD 10 n.5, 9-11; Annex A. But, as Plaintiff admits, Acadia disclosed that such incidents occurred "from time to time," Opp. 10-12, so they cannot support fraud.[9]

To fill the gap, Plaintiff rehashes the *NYT*'s reporting of detainment claims in 12 states

---

[7] Plaintiff argues that methadone clinic directors were incentivized to increase enrollment, Opp. 30, but they are low-level employees and there are no allegations connecting them to any of the alleged misstatements. *Omnicare*, 769 F.3d at 476 (non-defendants' state of mind relevant only if they "issued," "authorized…prepared…reviewed…approved," or "ratified" the statement).

[8] Contrary to Plaintiff's assertion, Opp. 8 n.1, Defendants' annexes are entirely proper: Annexes A & C organize the allegations to assist the Court, *see Edwards v. McDermott Int'l*, 2022 WL 3927828, at \*5 n.3 (S.D. Tex. Aug. 30, 2022) (annex was "helpful guide" and not "devious attempt to avoid page limitations"); and Annex B collates data from Acadia's SEC filings, which Plaintiff incorporates by reference, *see Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007).

[9] Plaintiff says Defendants do not contest they had to disclose a scheme under Item 303. Opp. 16. Not so. Defendants explained that a §10(b) claim can't be premised on alleging a failure to disclose something under Item 303. MTD 25-26. Plaintiff also says that Defendants "waived" a challenge to the *Inman* "scheme." Opp. 14. But the AC never once refers to *Inman* in its 20 references to a scheme, and Defendants explained that unrelated discovery issues do not support fraud. MTD 7, 15. Plus, Plaintiff *concedes* its scheme rests on statements. Opp. 1 (scheme was "conceal[ed]" in "public misstatements"), 8 (involved failure to "disclose"). Plaintiff "rel[ies] on the same fact[s]," so its §10b-5(a), (c) "scheme liability claim" fails, too. *Teamsters*, 83 F.4th at 533; MTD 30.

purportedly involving 100 employees.  Opp. 9-10.  But the *NYT* does not say *who* the employees were, *where* or *when* the incidents took place (or even whether they were during the Class Period), or that they were unlawful.  MTD 7-11; Annex A; *Marlar*, 525 F.3d at 446 (no scheme where plaintiff "d[id] not allege personal knowledge" or dates, identity of patients, or the proponents of the fraud).  Plaintiff identifies no discernable difference, let alone a material one, between Acadia's disclosures and the *NYT* allegations.  *See In re Ply Gem Holdings Sec. Litig.*, 135 F. Supp. 3d 145, 151 (S.D.N.Y. 2015) (failure to plead "basis upon which to assess [] materiality" is like "trying to guess the number of jellybeans in a jar after being told only that the jar is 'big'").[10]  Plaintiff says it can plead based on articles, but only if those articles meet the PSLRA's requirements; Plaintiff cannot evade the PSLRA by copy-and-paste.  *E.g.*, *Garbaccio v. Starbucks*, 2025 WL 3228275, at *12 (W.D. Wash. Nov. 19, 2025) ("Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff[.]") (collecting cases).[11]

Unable to support a companywide scheme through vague journalism, Plaintiff pivots to allegations from *other* cases.  *See* Opp. 12, 13, 15-16.  But unlike here, the plaintiffs in those cases pled objective benchmarks and facts ***during the class period*** showing the alleged misconduct was pervasive (including through statistical analysis) and detailing the defendants' knowledge.[12]

---

[10] Plaintiff also says "DOJ investigative findings" "confirmed" the scheme, Opp. 1, 8, but the "DOJ investigation" was actually an FCA action based on events 3+ years before the Class Period, *supra* 4.  And there were no "findings": it was settled without admissions.  Ex. 29 at 6.

[11] Plaintiff's newspaper cases, Opp. 10, all involved reports detailing examples of misconduct ***during the class period***, ***in addition to*** objective benchmarks showing the misconduct was pervasive and specific facts linking defendants to the alleged scheme.  *Infra* n.12.

[12] **Benchmarks**: *PSI*, 2011 WL 1335803, at *8-16, *48-49, *PSI* AC ¶¶42, 45, 58, 61 (defendant fell below regulatory staffing mandates; had 1/3 fewer nurses than peers; failed 6 of 7 "core" quality metrics; had violations 8x state average and 2x closest competitor); *CCA*, 2017 WL 6442145, at *2-10, *CCA* AC ¶39 (defendant had statistically highest grievances of all prisons and violated quality standards in its most important contracts; government memos detailed the deficiencies); *St. Clair* AC ¶¶10, 52-53, 186-87 (review of 75% of defendant's hospitals showed

6

Plaintiff also uses its Opposition to incant an entirely new "scheme" nowhere pled in the AC—a scheme to understaff methadone clinics. In the AC's 20 references to the "scheme," never once does it refer to understaffing or methadone clinics. *See, e.g.*, ¶136 (alleging detention scheme only); Opp. 12 (citing understaffing allegations in *other cases*). And it is well-established that plaintiffs cannot replead through briefing. *Hurley v. IRS*, 2025 WL 2689625, at *1 (6th Cir. Aug. 12, 2025). Indeed, only 3 paragraphs in the AC touch on methadone clinic staffing, ¶¶46, 48, 125(c), which *at most*, allege that at unidentified times (i) facility staffing has been "criticized" by unidentified inspectors and (ii) unidentified reports and employees said counselors had caseloads beyond state limits in unidentified places. ¶¶46, 48. Further, the AC fails to plead that *any* of the allegations occurred during the Class Period. Nor does it link them to any Defendant. *Supra* I.A. In any event, the allegations are not actionable because Acadia repeatedly disclosed that it experienced staffing shortages. *E.g.*, Exs. 2 at 29; 3 at 28 ("***shortage of nurses***, qualified addiction counselors and other…***personnel has been a significant operating issue***") (emphasis added).

Regardless, Plaintiff has no answer to Defendants' argument that the methadone clinic allegations fail because Plaintiff cannot connect them to a stock drop. *See* Opp. 6-7, 33-35 (no

***87-90%*** violated regulatory mandates for staffing/quality; had 60% higher violation rate than closest peer (2x more safety incidents, 4x staffing violations)); ***In re Am. Serv. Grp.* ("*ASG*")**, 2009 WL 1348163, at *12-20, *44-47 (M.D. Tenn. Mar. 31, 2009) (after internal investigation, defendant restated 5 years of financial statements (acknowledging companywide accounting fraud) and admitted that it had overcharged customers, had inadequate controls and senior executives inappropriately used reserves; defendants coordinated "extensive" drug smuggling; state investigators and 8 judges found ASG routinely denied necessary medical care).

**Defendants' Knowledge**: ***PSI***, 2011 WL 1335803, at *24-25, *52, *PSI* AC ¶¶42-45, 162-77 (defendants: said ongoing safety incidents were "historic"; "actively track[ed] [7] core" metrics showing quality deficiencies; reviewed monthly risk/incident reports); ***CCA***, 2017 WL 6442145, at *2-15 (defendants contractually required to review notices detailing violations; Bureau of Prisons threatened termination due to violations); ***St. Clair*** AC ¶¶10, 210-218 (defendants reviewed "7 core" quality metrics and analyzed staffing/patient ratios "daily" showing shortfall); ***ASG***, 2009 WL 1348163, at *12-27 (senior witness confirmed defendants coordinated drug smuggling, admitted to overcharging for drugs, and knew of accounting fraud, including because customers discussed issues with defendants).

7

response); MTD 7, 23 n.16; *Omnicare*, 583 F.3d at 944 (affirming dismissal where no loss caused by revelation); *Conaway*, 133 F. App'x at 1001 (failure to respond waives contrary argument).

> **C.  Plaintiff Fails to Plead a Misstatement**.

*Financial Metrics*. Plaintiff ignores Defendants' arguments about 22 Financial Metrics (MTD 18),[13] conceding that they are inactionable.  *Doe*, 507 F.3d at 1007.  Plaintiff argues that the remaining Financial Metrics[14] were misleading as Defendants failed to disclose that revenue from admissions/patient days was inflated.  Opp. 17.  But the AC fails to plead that length of stay increased *at all* during the Class Period much less materially so, *see supra* 6, and publicly disclosed data refutes that theory, MTD 12-13; Annex B.[15]  Plaintiff claims that "literal accuracy is not enough," Opp. 18, but the Financial Metrics describe objective factors contributing to growth— exactly the type of "hard" information this Circuit says must be false to be actionable.  MTD 18.[16]

*Quality Statements*.  Statements discussing "quality" are immaterial *unless* there is a "standard against which a reasonable investor could expect them to be pegged."  *City of Monroe Emps. Ret. Sys. v. Bridgestone*, 399 F.3d 651, 671 (6th Cir. 2005).  Rather than plead any such standard, Plaintiff again points to *St. Clair*.  Opp. 15-16.  But unlike here, the *St. Clair* plaintiffs

---

[13] Annex C at 1, 3-4, 6-8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38.

[14] Annex C at 2, 5, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 40-41.

[15] Plaintiff tries to sidestep this data by saying it isn't specific to acute facilities.  Opp. 13-14.  But Plaintiff cannot have it both ways: it's implausible that patient stay metrics could *materially* increase in Acadia's "most important business unit," Opp. 9, yet not affect companywide metrics. *See Lim v. Hightower*, 2025 WL 2965692, at *8 (6th Cir. Oct. 21, 2025) (rejecting "implausible" allegations).  Plaintiff also says that the data conflicts with its allegation that revenue per patient day declined in Q3-Q4 '24.  Opp. 13-14 (¶¶184, 187).  But Acadia reported *increased* revenue per patient day then.  Ex. 25 at 1 (1.4% increase); Ex. 30 at 1 (3.6% increase).  The AC incorporates those disclosures, so their contents control.  *See Marshall v. Wayne Cnty.*, 2023 WL 2707222, at *6 (6th Cir. Mar. 30, 2023) ("entirely proper" to rely on facts in incorporated documents).

[16] In Plaintiff's cases, Opp. 17-18, unlike here, there were detailed allegations either that the (i) "hard" information was wrong, *ASG*, 2009 WL 1348163, at *43 (company restated all financials); (ii) the statements concealed a "significant" financial decline, *Envision* AC ¶93; or (iii) statements were pegged to specific and verifiable metrics, *PSI*, 2011 WL 1335803, at *48-50.

8

pled detailed facts benchmarking Acadia's quality and placing alleged understaffing in context. *Supra* n.12. The same is true of Plaintiff's other cases. *See CCA*, 2017 WL 6442145, at *14 (pegged to "express, documented [contractual] expectations"); *PSI*, 2011 WL 1335803, at *47-54 (statements that issues were "historical," defendants "rigorous[ly]…monitor[ed]" facilities, and PSI was "in substantial [regulatory] compliance" were objectively verifiable). Here, Defendants merely expressed commitments to "quality," which this Circuit holds is immaterial. MTD 22.

*Warnings*. Plaintiff says the warnings are actionable because they created the impression that Acadia *may* be subject to certain risks, when those risks were already occurring. Opp. 22-23. This Circuit rejects that argument. As the Court recently noted, a risk factor may be **inadequate** under the safe harbor if it warns of a hypothetical risk that has materialized, but under *Bondali* and *Kolominsky* it is **not "independently actionable."** *St. Clair Emps. Ret. Sys. v. Acadia*, 2025 WL 2940714, at *6-7 (M.D. Tenn. Oct. 16, 2025) (emphasis added); *Bondali v. Yum! Brands*, 620 F. App'x 483, 491 (6th Cir. 2015); *Kolominsky v. Root*, 100 F.4th 675, 689 (6th Cir. 2024); MTD 20-21.[17] Besides, Acadia *did* warn investors that adverse incidents, quality lapses, and lawsuits **had materialized**. MTD 21; *e.g.*, Annex C at 43-A, 44-A. Acadia also warned it **was currently** subject to various litigations that could result in material damages. MTD 26-27.

**D.     Plaintiff Fails to Plead Loss Causation for Post-*NYT* Article Stock Declines**.

Acadia's disclosure of investigations are not CDs—they didn't contain any admissions. Acadia's financial results aren't CDs either, as they do not "relate to the fraud," Opp. 35, but to negative publicity, which reduced referrals apart from the alleged fraud. MTD 23.[18]

---

[17] Plaintiff says that courts have rejected *Bondali*, Opp. 23, but those cases predate *Kolominsky*, which is binding and cites *Bondali* approvingly. MTD 21 n.3. Plaintiff's only other in-Circuit cases, Opp. 22-23, do not consider whether risk factors are actionable.

[18] Plaintiff's cases all involve admissions. *Norfolk Cnty. Ret. Sys. v. Cmty. Health*, 877 F.3d 687, 696 (6th Cir. 2017) (disclosure "admitted the truth of…allegations"); *Chamberlain*, 757 F. Supp. 2d at 717-18 (executive suspended for "violating" company policy after DOJ investigation).

9

## II. PLAINTIFF'S *INMAN* CLAIM FAILS

**Untimely**. The clock began on Plaintiff's *Inman* claim when "a reasonably diligent plaintiff would have discovered," *Merck v. Reynolds*, 559 U.S. 633, 653 (2010), the facts constituting scienter and falsity, *McCann v. Hy-Vee*, 663 F.3d 926, 932 (7th Cir. 2011) (Posner J.). By Plaintiff's own allegations, that occurred more than 2 years before the AC was filed. MTD 24.[19]

**No statement**. Plaintiff has no response to its failure to identify a misleading statement (*compare* MTD 26 *with* Opp. 19 (merely regurgitating the standard)), which requires dismissal.

**Hindsight**. Plaintiff says damages were "uncapped." Opp. 19. But unlike Plaintiff's cases, the AC pleads *zero* facts showing that Defendants *knew* the losses would be "significant" in advance. Opp. 19-20.[20] Nor could they: The *Inman* plaintiff did not quantify damages until trial. MTD 27. Plaintiff pivots to arguing that Defendants knew *Inman* *existed*. Opp. 32. But Plaintiff must allege Defendants *knew ASC 450 applied* to *Inman*. MTD 29. Plaintiff's cases say the same: in each, the defendants ignored advice from auditors or regulators that the regulation applied. *SAIC*, 818 F.3d at 96 (audit revealed "possible material claim"); *In re Silver Wheaton Sec. Litig.*, 2016 WL 3226004, at *11 (C.D. Cal. June 6, 2016) (authority "informed" executives of tax issue). The AC doesn't allege Defendants' auditors advised them to apply ASC 450; in fact, the auditor confirmed ASC 450 *did not* apply when it declined any restatement post-verdict. MTD 29.[21]

---

[19] Plaintiff says "local papers" reporting on *Inman* didn't identify the case by name. Opp. 21. But Plaintiff's own case only requires that articles contain "company-specific information" (which the relevant articles did, MTD 24). *Staehr v. Hartford*,47 F.3d 406, 432-35 (2d Cir. 2008).

[20] *Pompliano v. Snap Inc.*, No. 2:17-cv-03664, Dkt. 1, ¶¶ 109, 137 (C.D. Cal. May 16, 2017) ($15M & treble request); *In re CBL Prop. Sec. Litig.*, 2022 WL 1405415, at *8 (E.D. Tenn. May 3, 2022) ($60-100M); *Ind. Pub. Ret. Sys. v. SAIC*, 818 F.3d 85, 94 (2d Cir. 2016) ($100Ms in fees).

[21] Plaintiff says the Court can't draw inferences from an auditor's approval at this stage. Opp. 33. But the Sixth Circuit did just that: it held, on a motion to dismiss, that the auditor "never issued a restatement…implying" it "did not believe the…financial figures were inaccurate." *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004). Plaintiff ignores this and relies on a case where there *was* a restatement, so the auditor had wavered in its belief. *ASG*, 2009 WL 1348163, at *51.

10

Dated: December 22, 2025      Respectfully submitted,

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
Alexander J. Rodney (*pro hac vice*)
Kaitlin P. Sheehan (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
Ashley P. Grolig (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
sandra.goldstein@kirkland.com
alexander.rodney@kirkland.com
kaitlin.sheehan@kirkland.com
jacob.rae@kirkland.com
ashley.grolig@kirkland.com


Milton S. McGee, III (BPR #24150)
Elizabeth O. Gonser (BPR #26329)
**RILEY & JACOBSON, PLC**
1906 West End Avenue
Nashville, TN 37203
Telephone:  (615) 320-3700
Facsimile:  (615) 320-3737
tmcgee@rjfirm.com
egonser@rjfirm.com


*Counsel for Defendants*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2025, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all

counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
sandra.goldstein@kirkland.com

*Counsel for Defendants*

12